Harry Simberg v. Commissioner.
Simberg v. Commissioner
Docket No. 43940.
United States Tax Court
T.C. Memo 1954-44; 1954 Tax Ct. Memo LEXIS 202; 13 T.C.M. (CCH) 477; T.C.M. (RIA) 54150; May 19, 1954, Filed *202 Edward O. Proctor, Esq., and Edward O. Proctor, Jr., Esq., for the petitioner. Joseph Landis, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax of $66,515.76 for 1944 and $171,291.71 for 1945. The issues for decision are: (1) Whether three hotels were held primarily for sale to customers in the ordinary course of the petitioner's business so that the gain was taxable as ordinary income rather than as long-term capital gain; (2) whether there was a partnership for tax purposes, including the petitioner and six others, owning some of the hotels; and (3) whether the petitioner's interest in the Cadel Hotel was in excess of the percentage reported by him. Findings of Fact The petitioner filed his returns for the taxable years with the collector of internal revenue for the District of Massachusetts. The petitioner entered into an agreement on December 1, 1943, with six other people relating to the investment of funds in Florida real estate. It provided that each was to make certain contributions to a fund and the petitioner was to invest the fund in such properties as he might choose, *203 taking title in his own name or in such other names as he might deem advisable. He was also to execute deeds, mortgages, and other instruments as though he were the sole owner. The net profits from the investment of the funds were to be distributed to each of the parties in direct proportion to the contribution of each. The following contributions were made to the fund: Max Schwartz
$40,000
Alfred Cohen
15,000
Walter J. Waldron
10,000
Harry Simberg
72,500 Harry Simberg acknowledged and the agreement provided that his son, Irving Simberg, was a participant to the extent of $10,000, his father-in-law, Max Miller, was a participant to the extent of $5,000, and his wife, Jennie, was a participant to the extent of $50,000. He owed his father-in-law $5,000, he and his son agreed that he owed the son about $10,000 for money previously loaned by the son, and he and his wife agreed that he owed her about $50,000 for money previously loaned by her to him. The petitioner, acting pursuant to the agreement of December 1, 1943, purchased, inter alia, the Berkeley Shores Hotel on December 11, 1943, and the Edgewater Beach Hotel on January 12, 1944, both in Miami, Florida. *204 The purchase price for the one hotel was about $181,000 and the purchase price of the other was about $155,000. He sold the Berkeley Shores Hotel on June 2, 1945 for about $285,000 and he sold the Edgewater Beach Hotel on September 30, 1944, for about $192,000. Neither hotel was held primarily for sale to customers in the ordinary course of the business of the petitioner and his associates under the agreement of December 1, 1943. The petitioner and Tina Miller purchased the Cadet Hotel in Miami, Florida, on March 27, 1944. The purchase price was about $100,000, of which about one-half was paid in cash and a mortgage was given for the balance. Tina paid $14,500 and the petitioner paid the balance of the cash. The property was sold on June 13, 1945 for about $139,000 and the petitioner's share of the gain was 73.6 per cent. The Cadet Hotel was not held primarily for sale to customers in the ordinary course of the business of the petitioner and Tina. The record does not show what income, if any, the petitioner reported as his share of the taxable gain from the sale of the Edgewater Beach Hotel, from the sale of the Berkeley Shores Hotel, or from the sale of the Cadet Hotel, or what *205 adjustment, if any, the Commissioner made in those items in determining the deficiencies. All facts stipulated by the parties are incorporated herein by this reference. Opinion MURDOCK, Judge: Both parties have set forth and argued three issues. The returns of the petitioner for the taxable years were not introduced in evidence; a copy of the notice of deficiency, which the Commissioner in his answer admitted to be correct, was attached to the petition but the statement attached to the notice of deficiency did not set forth or explain any adjustments made by the Commissioner in determining the deficiencies, merely stating that they were based upon findings contained in a report of examination dated October 1, 1948; attached to the petition as exhibit B is a report of an examining officer dated October 1, 1948, referring not to the petitioner but to Simco Hotels, also attached to the petition is an exhibit C being a report pertaining to the petitioner which is undated, but the answer of the Commissioner denies the allegations of the petition respecting exhibits B and C and there is no proof that they are pertinent to this proceeding; and, as a consequence of these deficiencies *206 in the pleadings and proof, the Court is uninformed as to how the Commissioner arrived at the deficiencies. The Commissioner contends that profits from the sales of the three Miami hotel properties were ordinary income because those properties were held primarily for sale to customers in the ordinary course of the petitioner's business or in the ordinary course of the business of the petitioner and whatever associates he may have had. The only question argued on this issue is whether the three hotel properties sold during the taxable years were held primarily for sale to customers in the ordinary course of the business of the petitioner or the business of the petitioner and whatever associates he may have had. The evidence shows that the petitioner was not engaged either alone or with others in the business of selling hotel properties or any other real properties to customers. The petitioner had some businesses which he regularly conducted and to which he devoted most of his time. They had nothing to do with the Florida properties in which he became interested. He bought a number of properties, mostly hotels, beginning in 1943. He purchased them for investment purposes and he held *207 each for a period of time during which either he collected the rents if the properties were leased or he operated them if they were not leased. He also bought and operated hotel properties in New England. He devoted at least 25 per cent of his time to his real estate activities. The real estate market in Florida was quite active. Each of the properties purchased was brought to the petitioner's attention by the owners or real estate agents, and the petitioner did not actively seek the properties which he purchased. Likewise, he never made any effort to sell any of them but was approached by the buyers or by agents for the buyers. He was in no sense a real estate agent nor did he ever hold himself out as a person who had properties for sale. He admits that he would sell any property if someone made him a sufficiently attractive offer. He sold some of his properties without holding them for very long periods, but the record as a whole justifies the finding which had been made that they were not held primarily for sale to customers in the ordinary course of his business. Another question which the parties argue is whether there was a partnership consisting of the petitioner and the six *208 other persons who signed the agreement of December 1, 1943. The result would be the same, of course, if this was a joint venture because a joint venture is treated the same as a partnership for tax purposes. Section 3797, Internal Revenue Code. The agreement was duly executed by all of the parties, Schwartz, Cohen and Waldron made cash contributions, and the petitioner owed Miller $5,000. The petitioner owed his son and wife the approximate amounts for which he recognized them as participants. Partnership returns were filed for 1944 and 1945. Cohen withdrew from the venture or partnership in 1947 and received a total of $46,500, representing his entire interest at that time. Schwartz withdrew prior to December 13, 1949, at which time it was recognized that the continuing participants owed him $125,000 for his entire interest in the venture up to the time of his withdrawal, and it was also recognized on December 13, 1949, that Waldron's interest amounted to $62,500, Max Miller's amounted to $31,250, and Irving Simberg's interest was $62,500. The petitioner, his wife, his son and Waldron never withdrew any of their interests and were continuing their joint venture *209 at the time of the hearing. They each claimed interests in various properties held in the name of the petitioner and his wife for the benefit of the group. There was a joint venture or partnership and the petitioner was not entitled to all of the proceeds from the sales of the Berkeley and Edgewater Hotels. It is conceded by the Commissioner that Tina Miller had an interest in the Cadet Hotel and was entitled to a part of the gain from its sale. The petitioner admits that his share was 73.6 per cent and the evidence shows that it was not in excess of that percentage. The parties have stipulated in regard to depreciation. All other issues have been waived by the petitioner. Decision will be entered under Rule 50.